# EXHIBIT A



IN STATE COURT OF COBB COUNTY
STATE OF GEORGIA

AUG 18 AM 8: 50

STATE COURT CLERK 13

SERVE

MICHAEL WATSON and SHANNON
WATSON,

    Plaintiffs,

v.

FLAGSHIP FINANCIAL GROUP, LLC
and SALLY A. FARRAR,

    Defendants.

Civil Action File
No. _____ 8109-2

## COMPLAINT

Plaintiffs, Michael Watson and Shannon Watson, file this Complaint and Jury Demand against Defendants, Flagship Financial Group, LLC and Sally A. Farrar, and show the Court the following:

## I.   PARTIES, JURISDICTION, AND VENUE

1.   Plaintiffs, Michael and Shannon Watson, reside in Loganville, Gwinnett County, Georgia. Their home, which served as collateral for a Refinance Loan guaranteed by the Veterans Administration ("VA"), is located at 3085 Templeton Lane, Loganville, Georgia 30052.

2.   Flagship Financial Group, LLC ("Flagship Financial") is a limited liability corporation whose principal place of business is located at 3130 W. Maple Loop Drive, Suite 200, Lehi, Utah 84043. Flagship Financial may properly be served with a summons and a copy of this Complaint by delivery of the papers to its registered agent for service of process, Sally A. Farrar, 1701 Barrett Lake Boulevard, Suite 510, Kennesaw, Georgia 30144.

3.   Sally A. Farrar is a real estate closing attorney whose place of business is located at 1701 Barrett Lake Boulevard, Suite 510, Kennesaw, Georgia 30144. Defendant Farrar may properly

be served with a summons and a copy of this Complaint by delivery of the papers to her law office.

4.      The Court has jurisdiction over Defendants because (a) Flagship Financial is authorized to and does transact business in the State of Georgia, and (b) Defendant Farrar is a resident of the State of Georgia.

5.      Venue is proper in this Court because Flagship Financial maintains a registered agent in this county, and Defendant Farrar resides in this county.

## II.   OPERATIVE FACTS

6.      Flagship Financial and Sally Farrar, together and independently, have engaged in a systematic scheme to charge United States military veteran-borrowers certain fees and charges in connection with VA Refinance Loans that federal law requires the lender to pay.

7.      The charges occur when a United States military veteran refinances his or her home mortgage by obtaining a loan guaranteed by the Veterans' Administration ("VA loan").

8.      Specifically, Flagship Financial, through it closing attorneys, including Sally Farrar, systematically charges certain fees, such as attorney fees, to United States military veteran-borrowers, which fees by federal regulation are required to be paid by the lender, Flagship Financial.

9.      Likewise, Sally Farrar, on behalf of Flagship Financial and other lenders, systematically facilitates the charging of certain fees, such as attorney fees, to United States military veteran-borrowers, which fees by federal regulation are required to be paid by the lender.

10.     These fees are charged to the borrower because Flagship Financial and Sally Farrar intentionally and knowingly fail to properly disclose the fees on the HUD-1 form in connection with VA Refinance Loans and instead move the fees to the wrong lines of the HUD-1 form.

11.    For instance, closing attorney fees cannot lawfully be charged to the borrower in connection with a VA Refinance Loan, except in certain circumstances that are not applicable here.[1]

12.    Closing attorney fees are required to be listed on either line 1101 or 1107 of the HUD-1 form.

13.    If a fee is disclosed on line 1101 or 1107 of a HUD-1 form and it is an attorney fee, and if it is incurred in connection with a VA Refinance Loan, that charge must be borne by the lender.

14.    Other types of fees, such as fees for title search and title examination, can lawfully be charged to the borrower in connection with a VA Refinance Loan.

15.    Title search and title examination fees are required to be listed on lines 1102 and 1103 of the HUD-1 form, respectively.

16.    If a fee is disclosed on line 1102 or 1103 of a HUD-1 form, it is supposed to be a title search or title examination fee, and even if it is incurred in connection with a VA Refinance Loan, that fee (if, in fact, for title search or title examination) may lawfully be charged to the borrower.

17.    Flagship Financial and Sally Farrar disclose closing attorney fee charges on line 1101 or 1107 in connection with (a) VA purchase money loans, (b) conventional refinance loans, and (c) conventional purchase money loans.  In comparison, Flagship Financial and Sally Farrar do not disclose those same charges on line 1101 or 1107 in connection with VA Refinance Loans.

---

[1] More specifically, the law allows certain charges to be allocated to the United States military veteran-borrower but only to the extent the total of such charges does not exceed 1% of the loan amount (the "1% cap").  In order to allocate closing attorney fees to the veteran-borrower at all, such fees must be included within the line items of the HUD-1 form that are subject to the "1% cap."  That is inapplicable here, as no attorney fees are included within the fees that are subject to the "1% cap" and such cap has already been exhausted with other charges.

18.     Flagship Financial and Sally Farrar intentionally and knowingly conceal attorney fee charges in connection with VA Refinance Loans by fraudulently bundling them into title search and title examination charges so that the charges can be included in the borrower's column, so that the charges are borne by the borrower and not by the lender.

19.     The VA will not approve, and therefore will not guarantee, a VA Refinance Loan if it contains a charge (for closing attorney fees) listed on line 1101 or 1107 of the HUD-1 form if that charge is listed[2] in the borrower's column (meaning the borrower pays the charge).

20.     Thus, Defendants disclose some or all of the fees paid to the closing attorney on line 1101 or 1107 of the HUD-1 form in connection with VA purchase money loans, conventional refinance loans, and conventional purchase money loans, yet Defendants engage in a systematic course of conduct to never, or nearly never, disclose the same payments made to the closing attorney on line 1101 or 1107 of the HUD-1 form in connection with a VA Refinance Loan because such a charge in connection with a VA Refinance Loan must legally be borne by the lender. Instead, in connection with a VA Refinance Loan, fees paid to the closing attorney that would be disclosed on line 1101 or 1107 of the HUD-1 form with any other type loan are improperly and fraudulently bundled into charges reflected on lines 1102 and/or 1103 of the HUD-1 form so as to facilitate illegally charging the fees to the United States military veteran-borrower.

21.     The illegal and unauthorized fees are impermissibly included in the principal loan amount financed by the borrower in violation of applicable federal law.

---

[2] The charge could lawfully be listed on line 1101 or 1107 of the HUD-1 form in the lender's column (meaning the lender pays the charge).

22.     The lender is further required by federal regulation to certify in writing that "[t]he lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedule set forth in paragraph (d) of 38 CFR 36.4312."

23.     Additionally. Sally Farrar certified in writing that "the HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction."

24.     Flagship Financial and Sally Farrar executed the required certifications with respect to Plaintiffs' VA Refinance Loan.

25.     The certifications made by Defendants with respect to Plaintiffs' VA Refinance Loan were false and were transmitted through the U. S. mails and by wire.

26.     The federal government relied upon the representations made in the certifications. Without the certifications, the Department of Veterans' Affairs would not have issued a guarantee for Plaintiffs' VA Refinance Loan.

27.     Plaintiffs relied upon the representations made in the loan closing documents, including the representation that the lender had not imposed any charges or fees against the veteran borrower in excess of those permissible under federal law.

28.     The point of the HUD-1 Settlement Statement is for the parties to rely on the representations made therein, and the parties' preparation of and execution of the document along with on-going mortgage payments in the amounts listed reflect that reasonable reliance.

29.     Plaintiffs were harmed because they were illegally required to pay for fees that federal law specifically prohibits lenders, like Flagship Financial, from charging borrowers, like Plaintiffs.

III.   **CLAIMS MADE**

A.   **Count I: Liability For Violation Of Georgia's RICO Act**

30.   This is an action asserting civil Georgia-RICO claims, pursuant to O.C.G.A. § 16-14-1, *et seq.*, on behalf of Plaintiffs, who refinanced their mortgages through VA Refinance Loan.

31.   Defendants, through a pattern of racketeering activity or proceeds derived therefrom, maintained both an interest in and control of an enterprise and money in violation of O.C.G.A. § 16-14-4(a).

32.   Defendants were associated with an enterprise and conducted and participated in the enterprise through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(b).

33.   Defendants conspired to violate both O.C.G.A. § 16-14-4(a) and (b).

34.   The predicate acts that make up the pattern of racketeering activity include the following:

   (a)   violation of O.C.G.A. § 16-8-102(1), (2), (3), and (4); residential mortgage fraud;

   (b)   violation of 18 U.S.C. § 1341; mail fraud in connection with multiple and continuous use of the U.S. mail in furtherance of the fraudulent scheme, including the sending of the federally-required certification, HUD-1 form, closing documents, and other loan-related documents by and between the lender Flagship Financial, the underwriter, Sally Farrar, the loan broker, the title company, and the Department of Veterans' Affairs; and

   (c)   violation of 18 U.S.C. § 1343; wire fraud in connection with multiple and continuous use of the U.S. wires in furtherance of the fraudulent scheme, including the sending of the federally-required certification, HUD-1 form, closing documents, and other loan-related documents by and between the lender Flagship

Financial, the underwriter, Sally Farrar, the loan broker, the title company, and

the Department of Veterans' Affairs.

35.     Defendants committed at least two of the predicate acts listed in the preceding paragraph

in furtherance of closing Plaintiffs' VA Refinance Loan.

36.     Defendants have committed multiple predicate acts listed herein in furtherance of the

scheme to charge U.S. military veteran-borrowers illegal charges in connection with VA

Refinance Loans. These predicate acts involve the same or similar intent, results, accomplices,

victims, and methods of commission and are not isolated incidents.

37.     The enterprise is composed of Flagship Financial, Sally Farrar, the underwriters, the

independent brokers, title companies, and other closing attorneys, as well as the law firms that

employ the closing attorneys.

38.     The members of the enterprise all share, separate and apart from their mainstream

businesses, the common goal of increasing their own revenues and profit as a proximate result of

Flagship Financial charging and collecting illegal and unauthorized fees in connection with VA

Refinance Loans.

39.     The independent brokers are not employees of Flagship Financial or agents of Flagship

Financial for the purposes of, and under the law applicable to, the RICO claims asserted in this

case. Sally Farrar and other closing attorneys are not employees of Flagship Financial, and the

law firms that employ the closing attorneys are not employees or agents of Flagship Financial.

The underwriters are typically, but not necessarily always, employees of Flagship Financial.

40.     The fact that the illegal and unauthorized fees are improperly moved to, and disguised

within, another category of permissible charges evidences and demonstrates that Flagship

Financial and Sally Farrar know of their existence and illegality.

7

41.    Flagship Financial makes loans from Utah and closes the loans, transmits loan documentation, and makes the required federal certifications from and to Georgia and other states using U.S. mails and wires.

42.    Sally Farrar closes loans in Georgia and transmits the loan documentation to Flagship Financial using U.S. mails and wires.

43.    The underwriters obtain information about the borrower by mail, email, telephone, or facsimile, and the loan documents are sent to Sally Farrar via U. S. mail, by email, facsimile, or other interstate mail or wire transmission.

44.    The closing funds, including the illegal and unauthorized charges, are paid by the borrowers by check or other funds ultimately transferred to Flagship Financial via the U. S. mail or by electronic funds transfers or other similar methods.

45.    Federally required certifications and other documents utilized in the process are transmitted to the federal government via the U. S. mail or by other interstate mail or wire transmission.

46.    Flagship Financial and Sally Farrar conducted and participated in the enterprise through an on-going, open-ended pattern of racketeering activity. The predicate acts for this pattern are regular, systematic, and continuous uses by Flagship Financial and Sally Farrar of the United States Postal Service, the wires, and email to transmit documents which are significant components of the scheme by Defendants to defraud United States military veteran-borrowers who are led to believe that they are being charged only lawful and authorized charges when, in fact, they are being charged illegal and unauthorized charges. Such use of the mail and wires violates 18 U.S.C. § 1341 (mail) and 18 U.S.C. § 1343 (wire).

47.     Each use by Flagship Financial and Sally Farrar of the mail to send a federally required certification to the Department of Veterans' Affairs and each use of the mail, wires, or email by Flagship Financial and/or Sally Farrar to send loan related documents and information, as well as illegal and unauthorized payments, violates 18 U.S.C. § 1341 and/or § 1343 because Flagship Financial and Sally Farrar knowingly participated in the scheme to fraudulently charge United States military veteran-borrowers illegal and unauthorized charges, and used those mailings to further their interests in that scheme.

48.     Thus, Flagship Financial and Sally Farrar committed multiple acts of mail and wire fraud based on the number of VA Refinance Loans made by Flagship Financial and/or closed by Sally Farrar and the number of uses of the mail and wires for each transaction.

49.     Plaintiffs believe that there have been many victims of the scheme.  Plaintiffs also believe that Flagship Financial and Sally Farrar continue in their scheme at the present and that, in all probability, they will continue to do so.

50.     The Lender's Certificates required by 38 CFR 36.4312(a), HUD Form 92900-A (VA Form 26-1802a), are a significant part of the scheme to defraud United States military veteran-borrowers in that the certification amounts to a written and false representation to the Department of Veterans Affairs that "[t]he lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedule set forth in paragraph (d) of 38 CFR 36.4312."

51.     In the absence of this representation, the Government would not have issued the guarantee for Plaintiffs' loan.

9

52.    The certification is transmitted to the Government by mail and/or wire in connection with every VA Refinance Loan made by Flagship Financial and/or closed by Sally Farrar, including Plaintiffs' loan.

53.    The HUD-1 forms are a significant part of the scheme to defraud in that the form itemizes, line by line, the charges paid by the parties to the loan, and it falsely represents and states that the United States military veteran-borrower is not paying certain fees, such as attorney fees, that are required to be paid by the lender when, in fact, the veteran borrower is being charged for those fees.

54.    In the absence of this false representation (if, for instance, the attorney fee charge is truthfully disclosed on the form), the Government would not issue the guarantee for the loan or the United States military veteran-borrower would not be charged the illegal and unauthorized fee.

55.    The HUD-1 is transmitted to the Government and by and between Flagship Financial and Sally Farrar by mail and/or wire in connection with every VA Refinance Loan made by Flagship Financial and/or closed by Sally Farrar, including Plaintiffs' loan.

56.    Plaintiffs are victims of a continuing, wide-spread scheme to defraud United States military veteran-borrowers into paying certain fees, such as attorney fees, in connection with VA Refinance Loans when the fees are legally the responsibility of the lenders, such as Flagship Financial.

57.    Plaintiffs reasonably relied on the express representation that the charges reflected on the applicable HUD-1 were as represented and lawful. As a result of such reliance, they have suffered actual damages and have been injured as a direct result of the enterprise.

B.     **Count II:  Liability For Fraud**

58.    Defendants falsely represented that Plaintiffs were not being charged for attorney fees and/or settlement fees.

59.    Defendants falsely represented that Plaintiffs were paying an amount for title examination that was not actually for the title examination.

60.    Defendants falsely represented that "[t]he lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedule set forth in paragraph (d) of 38 CFR 36.4312."

61.    Sally Farrar certified in writing that "the HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction."

62.    Defendants knew that these representations were false.

63.    The representations were material to the transactions, in that the loan would never have been made in the form it was made without the representations, and Plaintiffs would not have suffered damage if the false representations had not been made.

64.    Plaintiffs justifiably relied upon the representations in entering into the loans.

65.    The VA justifiably relied upon the representations in guarantying the loans.

66.    Because Defendants conduct violated O.C.G.A. § 16-8-102, it amounts to fraud *per se*.

C.     **Count II:  Liability For Punitive Damages**

67.    Flagship Financial and Sally Farrar acted fraudulently and with the intent to deceive Plaintiffs and the United States Veterans Administration, as well as many other borrowers.  The misconduct was willful and wanton, fraudulent, intentional, and undertaken with conscious indifference to the likely consequences as defined under O.C.G.A. §51-12-5.1(b).  Such conduct warrants the imposition of punitive damages.

68.    Flagship Financial and Sally Farrar acted with specific intent to cause harm as defined under O.C.G.A. § 51-12-5.1(f).

## IV.    DAMAGES CLAIMED

### A.    Compensatory and RICO Damages Sought

69.    Plaintiffs seek to recover all damages caused by the fraudulent scheme, including interest.

70.    Plaintiffs claim special damages, including the amount of fees charged to them that federal law required be borne by the lender, Flagship Financial.

71.    Plaintiffs claim special damages, including interest they have paid on the loan principal attributable to the fee that should have been borne by the lender.

72.    Plaintiffs seek general damages in an amount to be determined by the enlightened conscience of a fair and impartial jury.

73.    The action also seeks applicable RICO penalties, including treble damages, punitive damages, attorney fees, and reasonable costs of investigation and litigation, pursuant to O.C.G.A. § 16-14-6(c).

### B.    Uncapped Punitive Damages

74.    Plaintiffs seek uncapped punitive damages, pursuant to O.C.G.A. § 51-12-5.1(f), because Defendants acted with specific intent to cause harm. Plaintiffs seek punitive damages in an amount to be determined by the enlightened conscience of a fair and impartial jury.

WHEREFORE, Plaintiffs pray for the following relief:

(a)    That summons issue and service be perfected upon Defendants requiring them to appear before this Court and answer this Complaint;

(b)    That Plaintiffs have a trial by jury;

(c)     That Plaintiffs recover all elements of compensatory damages and all such

damages recoverable under Georgia law against Defendants as specified in this

complaint;

(d)     That Plaintiffs recover punitive damages against Defendants to punish them for

their misconduct and to deter them from future misconduct; and

(e)     That Plaintiffs have such other and further relief as this Court deems just and

proper.

This 16th day of August, 2010.

Respectfully submitted,

DAUGHTERY, CRAWFORD,
FULLER & BROWN, LLP

BY:

1430 Wynnton Road
Columbus, Georgia  31906
Post Office Box 1118
Columbus, Georgia 31902
Telephone: (706) 320-9646
Facsimile: (706) 494-0221

JASON CRAWFORD
Georgia Bar No. 193752
jason@dcfblaw.com
J.CLAY FULLER
Georgia Bar No. 280207
clay@dcfblaw.com
DUSTIN BROWN
Georgia Bar No. 086998
dustin@dcfblaw.com

13